<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PEDRO RIVERA, JR.,<br><br>                        Plaintiff,<br><br>       v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                        Defendant. | Civil Action No. 2:12-CV-03941 (SDW)<br><br><br>**OPINION**<br><br><br>April 10, 2013 |

**Wigenton, District Judge.**

Before the Court is plaintiff Pedro Rivera's ("Rivera" or "Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Barbara Dunn's ("ALJ") denial of Plaintiff's claim for Social Security Disability Insurance Benefits ("SSDI") under Title II of the Social Security Act ("Act"). The Commissioner, pursuant to Local Civil Rule 9.1, seeks a judgment affirming the final decision that Plaintiff was not disabled and, therefore, not entitled to Disability Insurance Benefits under the Act.

This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b).

This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

1

For the reasons stated herein, this Court **AFFIRMS** the ALJ's decision dated March 23, 2011("ALJ's Decision").

**BACKGROUND AND PROCEDURAL HISTORY**

a. *Education and Work History*

Rivera was born on October 14, 1961 and lives in Jersey City, New Jersey. (R. at 26.) Rivera was in a special education class and graduated eighth grade at the age of sixteen. (R. at 26-27.) Rivera "has a reading comprehension problem, reading difficulty, and minimal arithmetic skills." (R. at 16.)

Rivera was employed by PDQ Plastics for fourteen years as a "machine [and] floor guy." (R. at 27-28, 42.) Rivera's duties included lifting palettes of up to ninety-five pounds. (R. at 28.) After two injuries in the course of employment, Rivera was unable to lift more than five pounds with his arms. (R. at 15, 28.) According to Rivera, he was terminated due to the lack of light duty assignments and has not worked since April 3, 2007. (R. at 15, 27-28.) On June 27, 2012, Rivera filed this matter before the Court, seeking social security disability benefits. (Compl.)

b. *Injuries and Termination*

On July 14, 2006, Rivera was injured during the course of employment when he "fell between a truck and a loading dock" while carrying a heavy palette. (R. at 16, 42.) As a result of this fall, Rivera injured his "head, neck, shoulders, and elbow." (R. at 16.) Rivera testified that he struck the left side of his head when he fell and was taken to the emergency room for evaluation. (R. at 43.) At the hospital, Rivera was treated by Dr. George Padwoski ("Dr. Padwoski"), and was later referred to Dr. Jeffrey Miller ("Dr. Miller"). (R. at 16.) Approximately two months after his evaluation at the hospital, Rivera testified that he went to

"the doctor" and, was placed on pain medication and was told that nothing was broken. (R. at 32.)

In February 2007, Rivera was injured again and was subsequently diagnosed with "partial triceps tendon tear of the left elbow." (R. at 16.) According to Rivera, he was terminated after his employer was unable to provide light duty work. (R. at 28-29.)

    *c. Medical Treatment*

On March 9, 2007, an evaluation conducted by Dr. Miller revealed that Rivera "was working at full capacity." (R. at 16.) The examination also showed a "mild enlargement of the entire triceps tendon, with tenderness to palpation." (R. at 16.) As a result, Dr. Miller diagnosed Rivera with a "partial triceps tendon tear of the left elbow." (R. at 16.)

On April 3, 2007, Rivera "underwent a reconstruction of the left triceps tendon at the elbow . . . ." (R. at 16.) On October 9, 2007, Rivera "underwent removal of deep painful sutures in the left elbow." (R. at 16.)

On December 16, 2008, a consultative exam performed by Dr. I. Ahmad[1] ("Dr. Ahmad") revealed that Rivera had a "spastic lumbosacral area with restriction to flexion and range of movement." (R. at 16, 190-91.) In addition, Dr. Ahmad noted that Rivera showed positive symptoms in the Straight Leg Raising Test, but Rivera was able to "squat and stand on his heels with some difficulty." (R. at 16, 191.) Dr. Ahmad also noted that Rivera "was not able to lift his arm and that he had loss of grip strength and swelling in the left hand." (R. at 16.) As a result, Dr. Ahmad concluded that Rivera was "totally disabled." (R. at 17, 192.)

On March 9, 2009, Dr. Paul Fulford ("Dr. Fulford") examined Rivera and determined that he had "an adjustment disorder with depressed features, [and] only mildly impaired

---

[1] Dr. Ahmad's full name is not clearly stated in the record.

memory." (R. at 16.)  Furthermore, Dr. Fulford indicated that Rivera's examination "was largely unremarkable" and gave him a Global Assessment Functioning ("GAF") score of 65. (R. at 16.)

On April 20, 2009, at the request of Rivera's counsel, Dr. Cheryl Wong ("Dr. Wong") examined Rivera and diagnosed him with "left radial nerve neuropathy, left ulnar nerve neuropathy confirmed with EMG secondary to left elbow injury, and [] an adjustment disorder which caused [Rivera] significant distress." (R. at 16, 261.)

On July 27, 2009, Rivera was examined by Dr. Hongya Song ("Dr. Song") who reported that Rivera "was in no acute distress." (R. at 16.)  Dr. Song also noted that Rivera had a normal gait and stance, full range of motion, normal gross manipulation, good grip strength, normal sinus rhythm with no ischemic changes, and he did not use assistive devices to walk. (R. at 16.) Dr. Song indicated that Rivera's "[l]umbar spine x-ray showed mild scoliosis curvature and associated degenerative changes" and the "[c]ervical spine x-ray showed straightening of the lordotic curvature." (R. at 16.)

On January 6, 2011, Dr. Justin Fernando ("Dr. Fernando"), a consultative examiner, reported that Rivera "was in no acute distress." (R. at 17, 370.)  Dr. Fernando noted that Rivera had normal gait and station, and did not use assistive devices.  Dr. Fernando reported that Rivera had some "minor limitations with flexion and full rotation in the upper extremity[,]" and "minor degrees of restriction in his ability to reach overhead, [but] the rest of the examination was normal." (R. at 17.)

  d. *The ALJ's Decision*

On January 23, 2009, Rivera filed a Title II application "for a period of disability and disability insurance benefits, alleging disability beginning April 3, 2007." (R. at 12.) Rivera's claim was initially denied, and then on October 22, 2009 was denied again upon reconsideration.

(R. at 12.) On November 3, 2009, Rivera requested a hearing, which was held on December 14, 2010. (R. at 12.)

On March 23, 2011, the ALJ's Decision was issued, which stated that Rivera "has not been under a disability, as defined in the Social Security Act, from April 3, 2007, through the date of [the ALJ's] decision." (R. at 18.) Additionally, the ALJ considered Rivera's "age, education, work experience, and residual functional capacity [("RFC")]," and held that "there are jobs that exist in significant numbers in the national economy that [Rivera] can perform." (R. at 18.)

On April 4, 2011, after the ALJ issued her decision, Rivera submitted a request for Appeals Council review. (R. at 7-8.) On November 22, 2011, Rivera also submitted additional medical evidence. (R. 189, 382-87.) Specifically, Rivera submitted MRI results of his cervical spine and left shoulder performed on August 2, 2011 (R. 382-85), and an evaluation of these results by Dr. Robert D. Simon on August 22, 2011 (R. 386-87.) After reviewing the ALJ's Decision and the newly presented evidence, the Appeals Council determined that the new medical evidence and information "[did] not provide a basis for changing the Administrative Law Judge's decision."[2] (R. at 1-2.)

Rivera now contends that the Appeals Council did not adequately consider the newly submitted medical evidence. (Pl.'s Br. 10.) Additionally, Rivera also disputes the ALJ's finding

---

[2] The ALJ's Decision was based on the period starting from Plaintiff's onset date, April 3, 2007, and ending on March 23, 2011, the date on which the ALJ issued her decision. (R. at 2.) Plaintiff submitted diagnostic testing from August 2011 to the Appeals Council, however the Appeals Council concluded that the newly submitted medical evidence related to a period not implicated by the ALJ's Decision. (R. at 2.) As a result, the Appeals Council stated that if Plaintiff wanted the Social Security Administration to consider whether he was disabled after March 23, 2011, he would need to reapply. (R. at 2.)

5

that he has the ability to perform jobs that "exist in significant numbers in the economy." (Pl.'s Br. 17-22.)

**LEGAL STANDARD**

This court exercises plenary review of all legal issues on an appeal of a decision by the Commissioner of Social Security. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This court is required to give deference to the

ALJ's findings if supported by substantial evidence. *Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

**DISCUSSION**

A person is considered disabled for purposes of Social Security Disability benefits if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2006). A medically determinable impairment "is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Furthermore, a disability is characterized by "physical or mental impairment or impairments [] of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). Substantial gainful activity is work that involves significant physical or mental activities and is done for pay or profit. *See* 20 C.F.R. § 416.972(a)-(b) (2012). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has established a five step sequential analysis to adjudicate SSDI benefits claims. 20 C.F.R. § 404.1520(a)(1). If a claimant is found to be disabled or not disabled at any of the five steps, the analysis ends and a decision is made. 20 C.F.R. § 404.1520(a)(4). In the first step, the ALJ examines whether or not the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* At the second step, the ALJ examines whether the claimant has a medically determinable impairment or combination of impairments that is expected to result in death, or has lasted or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1529(a)(4)(ii); § 404.1509. If the claimant does not, then she is not disabled. At the third step, the ALJ considers the severity of the claimant's impairment or combination thereof, and determines whether it is equivalent to one of the impairments listed in the Code of Federal Regulations. 20 C.F.R. § 404.1529(a)(4)(iii). If it is not, the ALJ moves on to the fourth step, in which the ALJ considers the claimant's RFC and past relevant work. 20 C.F.R. § 404.1529(a)(4)(iv). If the claimant is deemed fit to perform his or her past relevant work, the claimant is not disabled. *Id.* Otherwise, the ALJ moves on to the fifth step. At this final step, the burden shifts to the Commissioner of Social Security to establish, using the

claimant's RFC, age, education, and work experience that the claimant can perform other work activities that exist in significant numbers in the national economy.  § 20 C.F.R. § 404.1529(a)(4)(v); 20 C.F.R. § 404.1560(c)(1-2).

   a. *Step One*

At step one, if the ALJ determines Plaintiff is engaged in "substantial gainful activity," disability benefits are denied.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520(b), 416.920(b).)

Here, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since April 3, 2007, the alleged onset date." (R. at 14.)  Therefore, the ALJ proceeded to the second step in the sequential analysis.

   b. *Step Two*

At step two, the ALJ examines whether the claimant has a medically determinable impairment or combination of impairments that are "severe." 20 C.F.R. § 416.929.  The ALJ also considers all symptoms to the extent "they can reasonably be accepted as consistent with the medical evidence, and other evidence." *Id*.

 In the instant matter, the ALJ found that Plaintiff had the following severe impairments: "lumbar and cervical degenerative disc disease, adjustment disorder, left elbow triceps rupture, left radicular nerve neuropathy and right shoulder arthralgia." (R. at 14.)  As a result, the ALJ proceeded to step three in the sequential analysis.

   c. *Step Three*

At step three, "the ALJ must compare the claimant's medical evidence to a list of impairments presumed severe enough to negate any gainful work." *Caruso v. Comm'r of Soc. Sec.*, 99 F. Appx. 376, 279 (3d Cir. 2004).  If Plaintiff's impairments "meet or equal" a listing,

Plaintiff is considered disabled and will be awarded benefits. *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). Here, the ALJ evaluated listing 1.00 (Musculoskeletal System) and listing 12.00 (Mental Disorder) set forth in the "Listing of Impairments" guide. (R. at 14.)

The ALJ analyzed Plaintiff's mental impairment under paragraphs B and C of listing 12.04. (R. at 15.) Under section 12.00 of the Listing of Impairments titled, "Mental Disorders," an evaluation of disability "requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on [claimant's] ability to work, and consideration of whether these limitations have lasted or are expected to last for . . . at least 12 months." 20 C.F.R. Pt. 4, Subpt. P, App. 1. The ALJ evaluated Plaintiff's disorder under section 12.04, "affective disorders." (R. at 15.) Paragraphs B and C of section 12.04 "describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity" and such limitations "must be the result of the mental disorder described in the diagnostic description." 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 12.00(A).[3]

Furthermore, "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting may reduce [a plaintiff's] ability to do past work and other work." 20 C.F.R. § 404.1545. In this regard, the plaintiff must show signs of "anatomical, physiological, or psychological abnormalities...through acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1528. "Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior,

---

[3] A mental impairment interferes with a claimant's ability to engage in substantial gainful activity if, under paragraph B of the listings, Plaintiff demonstrates marked limitations in at least two of the following categories: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* at § 12.04(B). "Marked" means the limitation "must be more than moderate but less than extreme." *Id.* at § 12.00(C). Or, if under paragraph C, claimant has a "[m]edically documented history of chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support" and claimant experiences "[r]epeated episodes of decompensation, each of extended duration." *Id.* at § 12.04(C)(1).

mood, thought, memory, orientation, development, or perception." *Id.* These must be shown "by observable facts that can be medically described and evaluated." *Id.*

Here, the ALJ determined that the evidence established that Plaintiff suffered "from depression within the meaning of listing 12.04, Appendix 1, Subpart P, Regulations No. 4." (R. at 15.) With respect to the B criteria listed in 12.04, the ALJ found that Plaintiff "suffered mild restrictions of activities of daily living; mild difficulties in maintaining social functioning and mild deficiencies of concentration, persistence or pace." (R. at 15.) The ALJ noted that although Plaintiff alleged a history of depression, he "was given a GAF of 65"[4] and had no treatment or hospitalizations for depression. (R. at 17.) The ALJ also concluded that the "requirements of the C criteria were not satisfied." (R. at 15.) As a result, the ALJ concluded that neither Plaintiff's physical nor mental impairments met or medically equaled "one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" to warrant a finding of disability. (R. at 14.)

Next, when a plaintiff's impairment(s) do not meet or equal the listed impairments, the ALJ must assess the claimant's "[RFC] based on all the relevant medical and other evidence in [the plaintiff's] record . . . ." 20 C.F.R. § 416.920(e). When assessing the plaintiff's RFC, the ALJ considers the plaintiff's "ability to meet the physical, mental, sensory, and other requirements of work . . . ." 20 C.F.R. § 404.1545(a)(4). The RFC assessment is then used at the fourth step of the sequential evaluation process to determine if the claimant can perform his or her past relevant work and at the fifth step "to determine if [the claimant] can adjust to other work." 20 C.F.R. § 416.920(e).

---

[4] GAF scores are used to rate the social, occupational, and psychological functioning of adults, and have scale ranges from 1 to 100, with 1 being the lowest and 100 being the highest. *Rios v. Commissioner of Soc. Sec.*, 444 Fed. App'x 532 n.3 (3d Cir. 2011) (internal quotations omitted.) The scores are used only as medical evidence that may be taken into consideration as to whether an individual is disabled. *Id.* at *2.

1) *The ALJ properly weighed the medical evidence*

Great weight should be accorded to a treating physician's reports, "especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)) (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)). However, "[a]n ALJ may reject a treating physician's opinion . . . on the basis of contradictory medical evidence" so long as he provides reasons for his decision. *Id*. (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)).

In the instant matter, the ALJ rejected Dr. Ahmad's opinion indicating that Plaintiff was "totally disabled" because Dr. Ahmad was not a treating physician and only saw Plaintiff once, at the request of counsel. (R. at 17.) The ALJ concluded that Dr. Ahmad's report "was inconsistent with the rest of the record and [Dr. Ahmad] ha[d] no treatment history with [Plaintiff]." (R. at 17.)

In reaching this conclusion, the ALJ considered the medical reports of several doctors who examined Plaintiff after the initial workplace injury. Specifically, the ALJ considered: Dr. Miller's report indicating that Plaintiff was working at "full capacity" by March 2007; Dr. Fulford's March 9, 2009 examination concluding that Plaintiff's overall examination was "largely unremarkable"; and Dr. Song's determination that Plaintiff "was in no acute distress" and "had a full range of motion" by July 27, 2009. (R. at 16.) The ALJ also considered an evaluation of Plaintiff's mental health by Dr. Benito Tan which revealed that he "was able to follow at least simple instructions" and maintain "adequate concentration, persistence and pace . . . and adapt to low demand work ." (R. at 16. 259.)

The ALJ noted that Plaintiff "underwent a reconstruction of the left triceps tendon at the elbow on April 3, 2007" and "removal of deep painful sutures in the left elbow [on October 9, 2007]." (R. at 16.) The ALJ considered Dr. Wong's consultative examination indicating that Plaintiff had an adjustment disorder which caused him distress as well as Dr. Fernando's examination which indicated that Plaintiff was in no acute distress. (R. at 16.)

After carefully considering the medical evidence presented the ALJ found that Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms . . . ." (R. at 17.) However, the ALJ concluded that "[d]espite the evidence demonstrating that the claimant has suffered from a medically determinable 'severe' impairment, the evidence also establishes that the claimant retains the capacity to function adequately to perform many basic activities associated with work." (R. at 17.) The ALJ stated that "[a]lthough [Plaintiff] suffers some limitation due to his impairments, and as a result, his capacity to perform work is affected" (R. at 17.) As a result, the ALJ concluded that Plaintiff still retained the RFC to perform the exertional demands of all work, with certain limitations. (R. at 17.)

The ALJ concluded that despite some evidence showing that Plaintiff suffered from "a medically determinable 'severe' impairment," the totality of the evidence fails to show that Plaintiff suffers from a "total disability." (R. at 17.) The evidence shows that Plaintiff "retains the capacity to function adequately [and] to perform many basic activities associated with work." (R. at 17.) After considering all the evidence, the ALJ concluded that Plaintiff retains the RFC to meet the demands of work, subject to certain limitations. (R. at 17.)

The August 2011 MRI diagnostic testing and evaluation that was submitted by Plaintiff to the Appeals Council, clearly was not available to the ALJ at the time of the ALJ Decision issued March 23, 2011. The August 2011 MRI, a diagnostic tool, is outside the relevant period

that the ALJ adjudicated, and it has not been clearly established that it relates back to Plaintiff's complaints for the relevant period. In this instance, the August 2011 diagnostic testing is not material. Additionally, there is no sufficient reason that the diagnostic information could not have been obtained earlier.

2) *The ALJ evaluated Plaintiff's credibility*

"Allegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft*, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529). Section 404.1529(a) provides that "statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably . . . produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a). This requires the ALJ to weigh the medical evidence to determine whether the claimant's alleged limitations "can reasonably be accepted as consistent with the medical . . . evidence." *Id.*; *see also Hartranft*, 181 F.3d at 362 ("[T]his obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.").

In addition to the objective medical evidence, some factors relevant to evaluating a claimant's alleged symptoms include the claimant's daily activities, the type of medication taken to treat the symptoms and its effectiveness, other treatment a claimant has received for relief of symptoms, and other factors concerning limitations and restrictions due to the alleged symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii). A claimant's complaints of pain should be given "great weight" only when supported by objective medical evidence, but may be disregarded if there

exists contrary medical evidence. *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993) (citations omitted).

In the instant matter, while acknowledging that the record establishes that Rivera had impairments which "could reasonably be expected to cause the alleged symptoms[,]" the ALJ concluded that Plaintiff's statements "concerning the intensity, persistence and limiting effects of [the] symptoms [were] not credible to the extent they [were] inconsistent with the [] [RFC] assessment." (R. at 17.) As a result, considering all of the evidence in the record, the ALJ found that "the evidence fail[ed] to support [Rivera's] assertions of total disability" and proceeded to step four of the sequential analysis. (R. at 17.)

    d. *Step Four*

If the ALJ is unable to make a determination at the first three steps of the sequential analysis, at step four the ALJ must determine whether Plaintiff has the RFC to perform her past relevant work experience. 20 C.F.R. § 404.1520(f). If the ALJ finds that Plaintiff can still do the kind of work Plaintiff previously engaged in, Plaintiff is not disabled. *Id*.

Here, the ALJ found that Plaintiff is unable to perform his past relevant work as a factory worker, machine operator and laborer, which has heavy and unskilled work. (R. at 17.) The ALJ elicited the opinion of Vocational Expert Rocco J. Meola ("VE" or "Meola") in reaching this conclusion. (R. at 17.) The ALJ gave Meola several hypothetical scenarios, and asked whether the hypothetical individual could perform his past relevant work (R. at 48-51.) For each scenario given, the VE responded that the hypothetical individual could not perform his past relevant work. (R. at 48-51.) The ALJ relied on the VE's opinion in determining that Plaintiff is unable to perform past relevant work. (R. at 17.)

*e. Step Five*

Once the ALJ determines that Plaintiff does not have the RFC to engage in his past relevant work, at step five, the ALJ must evaluate Plaintiff's ability to adjust to other work by "considering [his] residual functional capacity and [] vocational factors of age, education, and work experience." 20 C.F.R. § 416.960(c)(1). The ALJ must provide evidence demonstrating that Plaintiff can perform other work which exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). If other work exists that the Plaintiff can perform, he is not disabled. *Id*.

In the instant matter, the ALJ concluded that a significant number of jobs exist in the national economy that Plaintiff is capable of performing. (R. at 18.) The ALJ further explained that "[b]ased on a residual functional capacity for the full range of light work, [and] considering [Plaintiff's] age, education, and work experience, a finding of 'not disabled'" was warranted. (R. at 18.)

In light of the Plaintiff's "age, education, work experience, and RFC" the ALJ determined that Plaintiff is not disabled based on Medical-Vocation Rule 202.16.

Plaintiff was born on October 14, 1961 and was forty-five years old at the time of the ALJ's decision. (R. at 17.) The ALJ determined that Plaintiff is considered a "younger individual age 18-49, on the alleged disability onset date." (R. at 17.) As a result, Plaintiff's age does not seriously affect his ability to adjust to other work. 20 C.F.R. § 404.1563(c). With respect to Plaintiff's education, the ALJ found that Plaintiff was illiterate, but was able to communicate in English. (R. at 17.) The ALJ based her findings on Plaintiff's testimony that he was in "special education and [h]as problems reading and writing." (R. at 17.)

16

The ALJ determined that "[t]ransferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled . . . ." (R. at 18.) After hearing the testimony of a vocational expert, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform . . . ." (R. at 18.) The vocational expert testified that an individual with Plaintiff's RFC had the ability to perform work as a weld inspector, sealing machine operator, and decal operator. (R. at 18.) The vocational expert further testified that there are 35,000 such jobs in the national economy, with "1,200 jobs in the Northern New Jersey region." (R. at 18.)

Therefore, based on the testimony of the vocational expert, Medical-Vocational Rule 202.16, and the abovementioned factors, the ALJ found that Rivera "has not been under a disability, as defined in the Social Security Act," from April 3, 2007, through on March 23, 2011, the date of the ALJ's Decision. (R. at 18.)

**CONCLUSION**

For the foregoing reasons, the Court holds that substantial evidence supports the ALJ's Decision. Accordingly, the Court **AFFIRMS** the ALJ's Decision.

s/ Susan D. Wigenton, U.S.D.J.

Orig:      Clerk
cc:        Parties